IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

|  |  |
|---|---|
| MICHAEL PERDUE,<br><br>                    Plaintiff,<br><br>v.<br><br>DENNIS KEPKA, M.D., et al,<br><br>                    Defendants. | Case No. 23-1196-DDC |

### MEMORANDUM AND ORDER

Timing matters. And plaintiff Michael Perdue's timing was off, argues defendant Dr. Dennis Kepka. Dr. Kepka asks the court to dismiss plaintiff's claims against him as time-barred by the statute of limitations. Plaintiff filed this action in state court, bringing claims for medical malpractice and 42 U.S.C. § 1983 deliberate indifference to a serious medical condition. He asserts these claims against Dr. Kepka and others. Plaintiff premises his claims on the allegedly deficient medical treatment he received after sustaining a shoulder injury while an inmate at Ellsworth Correctional Facility. Defendants later removed the case to federal court.

Both parties agree that plaintiff filed his claims before the statute of limitations had expired. Both parties also agree that plaintiff neglected to complete service of process within the 90-day window provided by Kansas law. And, under Kansas law, such late service shifts an action's commencement date from the date of filing to the date of service. Such a shift happened here and it makes plaintiff's claims untimely, Dr. Kepka argues, because plaintiff commenced this suit three months too late. But plaintiff responds, explaining that he filed a motion to extend his time to serve in state court, which salvages his date of filing commencement date. And that

motion remained pending when defendants removed the case.  So, plaintiff explains, his still-pending state court motion allows the court to apply the earlier filing date to determine commencement.  Now the court must decide whether plaintiff's action is time-barred under Dr. Kepka's theory of a shifting date of commencement or timely under plaintiff's pending motion.

Dr. Kepka's Motion to Dismiss (Doc. 11) urges the court to dismiss plaintiff's claims against him based on two separate provisions of Fed. R. Civ. P. 12:  12(b)(5) for untimely and insufficient service of process; and 12(b)(6) for an action barred by the statute of limitations.  But because the court concludes plaintiff's action is time-barred, it need reach only the second argument.  In so concluding, the court determines, first, that Kansas law governs the question asking when plaintiff commenced his lawsuit.  And this law concludes that plaintiff commenced his action when he served Dr. Kepka.  After deciding that question, the court addresses whether plaintiff's pending motion provides grounds to apply the earlier commencement date when plaintiff filed.  Finding that plaintiff hasn't established good cause to merit an exception based on his pending motion, the court concludes that plaintiff's action is time-barred.  The court thus grants Dr. Kepka's motion and explains its reasoning, below.

**I.     Background**

The following facts come from plaintiff's Petition (Doc. 1-1).  The court accepts these facts as true and views them in the light most favorable to plaintiff, the party opposing the Motion to Dismiss.  *Doe v. Sch. Dist. No. 1*, 970 F.3d 1300, 1304 (10th Cir. 2020) (explaining on a motion to dismiss that the court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to" the party opposing the motion (citation and internal quotation marks omitted)).

### *Plaintiff's Injury and Subsequent Medical Care*

Plaintiff was an inmate at Ellsworth Correctional Facility (ECF) when he severely injured his left shoulder on April 25, 2020. Doc. 1-1 at 4, 5 (Pet. ¶¶ 11, 23). Two days later, plaintiff sought medical care from Nurse Shawn Bruce at ECF. *Id.* at 3, 6 (Pet. ¶¶ 4, 25).[1] Plaintiff didn't receive any medical treatment at that appointment—no prescription for pain medication, no sling or other shoulder immobilization method, and no x-ray or order for a future x-ray. *Id.* at 6 (Pet. ¶¶ 28–29). After that appointment, plaintiff repeatedly requested treatment, but didn't receive any until a May 12, 2020[2] x-ray. *Id.* (Pet. ¶ 31). The x-ray revealed a fracture of plaintiff's distal clavicle with displacement. *Id.* at 7 (Pet. ¶ 32). The next day, Dr. Kepka examined plaintiff. *Id.* (Pet. ¶ 34). After that examination, Dr. Kepka didn't request an orthopedic consult until May 22, 2020. *Id.* And plaintiff saw an orthopedic specialist on June 3, 2020. *Id.* (Pet. ¶ 35).

### *Plaintiff's Surgery*

Updated x-rays by the orthopedic specialist "revealed a clavicle fracture with 100 percent displacement and angulation." *Id.* (Pet. ¶ 37). Plaintiff alleges the delay in proper treatment caused the shoulder's worsened state and that, without that delay, he likely could have healed through non-surgical methods. *Id.* (Pet. ¶ 38). Plaintiff had surgery to repair his shoulder on August 13, 2020. *Id.* at 8 (Pet. ¶ 40). The surgery involved "an open reduction internal fixation

---

[1]   Plaintiff's Petition alternates between references to Nurse Bruce and Nurse Brown. *See, e.g.*, Doc. 1-1 at 3, 6 (Pet. ¶¶ 4, 25). Because plaintiff brings his claims against Shawn Bruce, LPN, and not against anyone with the last name Brown, the court assumes plaintiff intended the entire Petition to refer to Nurse Bruce. If the court is mistaken in this assumption, it doesn't alter any of the court's decisions here.

[2]   The Petition asserts that the x-ray occurred on March 12, 2020. Doc. 1-1 at 6 (Pet. ¶ 31). But that timeline doesn't work with the injury date (April 25, 2020)—or any other dates included in the medical treatment portion of plaintiff's Petition. And the Petition later identifies the x-ray as occurring on May 12, 2020. *Id.* at 7 (Pet. ¶ 34). So, the court assumes the May date—not March—is the proper one.

of his clavicle with iliac crest bone grafting." *Id.* (Pet. ¶ 39). Plaintiff continues to suffer significant pain and mobility issues in his shoulder and likely will require additional treatment in the future. *Id.* (Pet. ¶¶ 42–44). Plaintiff attributes these continued issues to the delay in his treatment and surgery. *Id.*

## II. Legal Standard

Fed. R. Civ. P. 12(b)(6) allows a party to move the court to dismiss an action for failing "to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). For a complaint to survive a Rule 12(b)(6) motion to dismiss, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Although the statute of limitations is an affirmative defense, it may be resolved on a Rule 12(b)(6) motion to dismiss when the dates given in the complaint make clear that the right sued upon has been extinguished." *Cosgrove v. Kan. Dep't of Soc. & Rehab. Servs.*, 332 F. App'x 463, 465 (10th Cir. 2009) (internal quotation marks and citation omitted).

When considering a Rule 12(b)(6) motion to dismiss, the court must assume that the factual allegations in the complaint are true. But this obligation doesn't mean that the court is "'bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

## III. Analysis

### A. Statute of Limitations and Commencement

As it is often, the exact date of this action's commencement is crucial to deciding whether it's barred by the statute of limitations. Neither party disputes the end date for plaintiff to file a

of his clavicle with iliac crest bone grafting." *Id.* (Pet. ¶ 39). Plaintiff continues to suffer significant pain and mobility issues in his shoulder and likely will require additional treatment in the future. *Id.* (Pet. ¶¶ 42–44). Plaintiff attributes these continued issues to the delay in his treatment and surgery. *Id.*

## II. Legal Standard

Fed. R. Civ. P. 12(b)(6) allows a party to move the court to dismiss an action for failing "to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). For a complaint to survive a Rule 12(b)(6) motion to dismiss, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Although the statute of limitations is an affirmative defense, it may be resolved on a Rule 12(b)(6) motion to dismiss when the dates given in the complaint make clear that the right sued upon has been extinguished." *Cosgrove v. Kan. Dep't of Soc. & Rehab. Servs.*, 332 F. App'x 463, 465 (10th Cir. 2009) (internal quotation marks and citation omitted).

When considering a Rule 12(b)(6) motion to dismiss, the court must assume that the factual allegations in the complaint are true. But this obligation doesn't mean that the court is "'bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

## III. Analysis

### A. Statute of Limitations and Commencement

As it is often, the exact date of this action's commencement is crucial to deciding whether it's barred by the statute of limitations. Neither party disputes the end date for plaintiff to file a

timely action here: April 17, 2023. Doc. 11 at 4; Doc. 13 at 3. And both parties agree that plaintiff timely filed his action in Kansas state court on April 17, 2023. Doc. 11 at 4; Doc. 13 at 1, 3. So far, all seems well—plaintiff's action appears timely.

But here comes the wrench: Kansas law gives a plaintiff 90 days to effect service on a defendant, *see* Kan. Stat. Ann. § 60-203(a), and plaintiff here didn't serve defendant within the requisite 90 days. Doc. 11 at 4; Doc. 13 at 2. Instead, plaintiff filed a motion asking to extend the time to serve—a motion that remained pending in state court when defendants removed the action to our court. Doc. 11 at 20–21 (Def. Ex. B); Doc. 13 at 4. And plaintiff's timely (or untimely) service matters to the statute of limitations analysis—at least under Kansas law—because late service shifts an action's commencement from the date when it's filed to the date when plaintiff effects service. Here, that's a difference of three months.

To address the question of commencement, the court first reviews the applicable statute of limitations. Then, the court determines whether Kansas law or the Federal Rules of Civil Procedure govern commencement of this removed action. Finally, having decided that Kansas law governs the commencement question, the court addresses whether plaintiff has demonstrated good cause to extend the time of service per his pending motion.

### 1. Applicable Statute of Limitations

Plaintiff asserts two claims against Dr. Kepka. One claims medical malpractice (Count I). The other, invoking 42 U.S.C. § 1983, claims deliberate indifference to a serious medical condition claim (Count II) against Dr. Kepka. Doc. 1-1 at 8–10 (Pet. ¶¶ 45–55). Both claims rely on events that took place in the spring of 2020. Dr. Kepka asserts that plaintiff's "cause of action seems to have accrued, at the latest, on or about June 10, 2020." Doc. 11 at 2. That is when plaintiff learned that he would need to undergo surgery to repair his severely injured shoulder. Doc. 1-1 at 8 (Pet. ¶ 40). Plaintiff doesn't dispute accrual on June 10, 2020.

5

Kansas law establishes a two-year statute of limitations for medical malpractice claims. Kan. Stat. Ann. § 60-513(a)(7). The same statute also provides a 2-year limitations period for plaintiff's federal § 1983 claim. *See* Kan. Stat. Ann. § 60-513(a)(4). This is so because Congress, when it enacted § 1983, neglected to adopt a statute of limitations. *See Owens v. Okure*, 488 U.S. 235, 239 (1989) ("In this case, we again confront the consequences of Congress' failure to provide a specific statute of limitations to govern § 1983 actions."). To fill this gap, courts apply "the most analogous limitations period provided by state law." *Hamilton v. City of Overland Park, Kan.*, 730 F.2d 613, 614 (10th Cir. 1984). In Kansas, that's the two-year statute of limitations for personal injury torts. *Id.* (citing Kan. Stat. Ann. § 60-513(a)(4)); *see also Wallace v. Kato*, 549 U.S. 384, 387 (2007) ("Section 1983 provides a federal cause of action, but in several respects relevant here federal law looks to the law of the State in which the cause of action arose. This is so for the length of the statute of limitations: It is that which the State provides for personal-injury torts.").

Here, plaintiff didn't file this action until April 17, 2023, months after the two-year statute of limitations would have expired. *See* Doc. 1-1 at 1. But both parties agree that plaintiff timely filed his action because plaintiff's deadline to commence a suit was tolled until April 17, 2023, by the Kansas Supreme Court's COVID tolling order. Kan. Stat. Ann. § 20-172(d)(2); Doc. 11 at 4; Doc. 13 at 3. So, evaluating the timeliness of plaintiff's claim all comes down to this: Was filing his claims with the state court sufficient?

If an action's commencement date depends upon plaintiff's filing date *and* timely service on the defendant, late service would mean that plaintiff didn't commence his action by April 17, 2023 (at filing) but instead on August 16, 2023 (when he effected service). And then the action is time-barred. On the other hand, if an action's commencement date depends upon plaintiff's

6

filing date *alone*, late service doesn't affect the action's timeliness at all.  So, the Rule 12(b)(6) motion ruling here hinges on how the court determines the action's commencement date—which, in turn, hinges on which law applies to determine commencement of the action:  state or federal.

### 2. Commencement under Kansas Law or Fed. R. Civ. P. 3

Dr. Kepka would like the court to apply state law to determine commencement.  The Kansas commencement provision reads like this:

> A civil action is commenced at the time of:  (1) Filing a petition with the court, if service of process is obtained or the first publication is made for service by publication within 90 days after the petition is filed, except that the court may extend that time an additional 30 days upon a showing of good cause by the plaintiff; or (2) service of process or first publication, if service of process or first publication is not made within the time specified by paragraph (1).

Kan. Stat. Ann. § 60-203(a).  So, under Kansas law, a civil action commences at the time of filing but *only if* plaintiff serves defendant within 90 days.  *Id.*  If plaintiff neglects to serve defendant within that timeframe, then the action commences at the time of service.  *Id.*  And the court may extend this 90 day window for an additional 30 days "upon a showing of good cause by the plaintiff[.]" *Id.*  Again, both parties agree that plaintiff didn't serve Dr. Kepka within the requisite 90 days after filing his Petition.  Doc. 11 at 4; Doc. 13 at 3.  And, Dr. Kepka contends, plaintiff hasn't shown good cause meriting the additional 30 days requested by plaintiff's pending state court motion.  Doc. 17 at 4.

Plaintiff—for his part—would like the court to apply the Federal Rules of Civil Procedure.  Under Fed. R. Civ. P. 3, a "civil action is commenced by filing a complaint with the court"—full and hard stop.  That is, under this federal rule, timely service doesn't affect an action's commencement date.  Plaintiff argues the court should apply Rule 3, and aiming to support his position, he references an Eastern District of Kentucky case from 1988:  *MHC, Inc. v.*

*Int'l Union, United Mine Workers of Am.*, 685 F. Supp. 1370 (E.D. Ky. 1988).  In *MHC*, the court determined, under Fed. R. Civ. P. 3, that a state law claim commenced—for statute of limitation purposes—on the case's filing date.  *Id.* at 1390.  And *MHC* distinguishes between borrowing the statute of limitations from state law and borrowing the commencement rules from state law.  Applying *MHC*'s reasoning here, plaintiff argues, would allow plaintiff's filing date to determine commencement under Rule 3 regardless of timely service, thus avoiding the statute of limitations problem altogether.  But there's an important difference between that case and this one.  The case at issue in *MHC* originated in federal court—it wasn't removed.  So, Rule 3 plainly applied.  Here, however, the question's not so simple.

The Eighth Circuit has spoken to the commencement question in the context of a case removed from state court.  *See Winkels v. George A. Hormel & Co.*, 874 F.2d 567 (8th Cir. 1989).  In *Winkels*, the Eighth Circuit evaluated "whether the state or federal rule of procedure governing the commencement of a suit applie[d] to a . . . claim initiated in state court and subsequently removed to federal court."  *Id.* at 568.  And the Circuit held that Minnesota's procedural rule governing commencement of actions—not the federal rule—applied to a removed action.  *Id.* at 570.  In reaching its conclusion, the Eighth Circuit invoked "the well-established rule that a federal court must honor state court rules governing commencement of civil actions when an action is first brought in state court and then removed to federal court, even though the cause of action arises from federal law."  *Id.* (citations omitted).  And the Eighth Circuit also explained that "Federal Rule of Civil Procedure 81(c) provides that the federal rules govern procedure *after* removal from state court.  Since federal rules govern proceedings only after removal, Rule 3 is irrelevant to whether an action was properly commenced in state court prior to removal."  *Id.* (emphasis in original) (citations omitted).

The Tenth Circuit has cited *Winkels* favorably, recognizing that "federal courts have applied state rules of procedure to conduct occurring prior to removal." *Griffen v. City of Okla. City*, 3 F.3d 336, 341 (10th Cir. 1993) (concluding that a federal court may apply state-law sanctions to a pleading filed in state court prior to removal). In so concluding, the Tenth Circuit also referenced cases finding that state—not federal—failure-to-prosecute laws applied when that failure occurred before removal. *Id.* And the Tenth Circuit has held that state law controls the procedural question whether service of process was perfected before removal. *Wallace v. Microsoft Corp.*, 596 F.3d 703, 706 (10th Cir. 2010) ("After removal, federal rather than state law governs the course of the later proceedings. Despite that, federal courts in removed cases look to the law of the forum state . . . to determine whether service of process was perfected prior to removal." (internal citation omitted)).

Leaning into this state-law-before-removal rationale, a district court in our Circuit determined that state procedural rules—not federal ones—governed whether a plaintiff could invoke the prison mailbox rule to make timely a civil rights action he originally had filed in state court. *Chavez v. Corr. Med. Servs.*, No. CV 09-1205 BB/WPL, 2010 WL 11623450, at *3 (D.N.M. May 19, 2010); *see also Dravo Corp. v. White Consol. Indus., Inc.*, 602 F. Supp. 1136, 1139 (W.D. Pa. 1985) (holding civil action commenced in accordance with Pennsylvania law, not Fed. R. Civ. P. 3, because the action "originated in Pennsylvania state court and was removed to federal court only after it had been 'commenced'"). To be sure, not all circuits endorse the state-law-before-removal approach. In *Cannon v. Kroger Co.*, the Fourth Circuit refused to apply state rules to a NLRA hybrid action originally filed in state court. 832 F.2d 303, 305–06 (4th Cir. 1987). Instead, the Fourth Circuit held "that commencement of a 'hybrid' claim brought in district court is to be assessed in accordance with the Federal Rules of Civil

9

Procedure . . . [there is] no justification for allowing a different result simply because the underlying action is initiated in a state court." *Id.* But our Circuit has signaled that it endorses the state-law-before-removal rationale, as discussed above. And this court sees no reason why that rationale wouldn't apply to a commencement analysis. And so, this court predicts that the Tenth Circuit—consistent with its other decisions about conduct before removal—would apply Kansas law in this case.

Here, plaintiff's lawsuit against Dr. Kepka was commenced in state court. And plaintiff effected the delayed service before removal. Drawing on the state-law-before-removal rationale, this court concludes that Kan. Stat. Ann. § 60-203(a)—not Fed. R. Civ. P. 3—controls the decision when this action was commenced. And under that Kansas statute, this action commenced when plaintiff effected service on Dr. Kepka—on August 16, 2023—because plaintiff neglected to serve defendant within the 90-day timeframe. *See* Kan. Stat. Ann. § 60-203(a) (when service made within 90 days of filing, case commenced at filing). And plaintiff thus relinquished the April 17, 2023, filing-date commencement. Kan. Stat. Ann. § 60-203(a). So, bottom line, plaintiff's claims are time-barred. They are, that is, unless Kan. Stat. Ann. § 60-203(a)'s exception applies based on plaintiff's pending state court motion for additional time to serve. The court considers that exception and motion, next.

### B.    Pending State Court Extension Motion

Kansas law provides "that the court may extend [the 90-day service timeframe] an additional 30 days upon a showing of good cause by the plaintiff[.]" *Id.* And plaintiff moved the state court for just such an extension before the time of service expired. Doc. 11 at 20–21 (Def. Ex. B). In that motion, plaintiff explained that he hadn't served defendants because he "ha[d] not been able to verify the correct address to serve all of the Defendants[.]" *Id.* at 21 (Def. Ex. B). This situation leaves the question whether plaintiff's pending motion—never denied or

10

granted in state court—salvages plaintiff's April 17, 2023, commencement date. Consistent with the state-law-before-removal rationale above, the court once again applies Kansas law to decide.

No Kansas case specifically addresses whether plaintiff's excuse for not timely serving—inability to verify all the defendants' correct addresses—qualifies as "good cause" under Kan. Stat. Ann. § 60-203(a)'s exception. But the relevant Kansas cases do provide some parameters for deciding how a Kansas court would have decided plaintiff's motion. And, while state law applies here, our own district's understanding of "good cause"—under Rule 4(m)'s federal exception to timely service—also proves instructive. The court outlines first Kansas's and then the federal case's good cause standard, below.

### 1.   Kansas Case Law on Good Cause

The Kansas Supreme Court has spoken unequivocally about *when* a party must make arguments for good cause to extend service time under Kan. Stat. Ann. § 60-203(a). It held that a court may accept only good cause arguments provided at the time of the requested extension—not upon challenge at a later date. *Finley v. Est. of DeGrazio*, 170 P.3d 407, 411 (Kan. 2007). In the same case, the Kansas Supreme Court also identified two excuses that don't qualify as good cause for failure to make timely service—"a mistake of counsel or ignorance of the rules"—and one that does suffice—an "error of a court clerk." *Id.* at 412. A later Kansas Court of Appeals case further sussed out Kansas's good cause standard. *See Le v. Joslin*, 202 P.3d 677 (Kan. Ct. App. 2009). In *Le*, the Kansas state trial court had granted plaintiff an extension of time with a conclusory statement in its order that plaintiff had shown good cause. Defendant challenged the extension on summary judgment, arguing that plaintiff had failed to demonstrate good cause, and the trial court agreed. Plaintiff appealed, contending that the trial court erred in determining that good cause didn't exist. The Kansas Court of Appeals affirmed the summary judgment entered against plaintiff. The appellate court explained that "the record fail[ed] to show that any

reasonable and diligent efforts were made by [plaintiff] to locate and serve [defendant][.]" *Id.* at 682. "Instead the record establishe[d] that [plaintiff] never even attempted to serve" defendant before receiving the extension. *Id.* Later, the court noted that plaintiff hadn't "brought forth any evidence to demonstrate that there was any sort of error outside of her control that prevented her from attempting to serve[.]" *Id.*

Here, plaintiff concedes that he didn't serve Dr. Kepka within 90 days. Doc. 13 at 3. But instead of establishing good cause for that failure, he simply points to his motion to extend time to serve. *Id.* at 3–4. Plaintiff later circles back to the good cause argument, this time urging the court to apply Fed. R. Civ. P. 4 to extend his time to serve. *Id.* at 8. Plaintiff again suggests that his timely filing of a motion to extend itself demonstrates good cause. *Id.* He also contends that Dr. Kepka "has not shown that he has been prejudiced in any way in the delay in service." *Id.*

None of plaintiff's arguments align with a showing of good cause under Kansas case law. Plaintiff's filing of the state court motion to extend time doesn't establish good cause because the Kansas Supreme Court has made clear that good cause must inhere *before* filing such a motion. Plaintiff also provides no Kansas case law—and the court has found none—to suggest that prejudice to the defendant factors into a good cause analysis. So, plaintiff is left with his lone state court motion statement that he couldn't verify all the defendants' addresses. But again, plaintiff provides no Kansas case law—and again, the court has found none—to suggest that difficulty locating defendants, standing alone, is grounds for a good cause exception. This court predicts that a Kansas court wouldn't hold plaintiff's unknown addresses excuse sufficient to demonstrate "reasonable and diligent efforts" to locate and serve Dr. Kepka. *Le*, 202 P.3d at 682. The good cause reasons Kansas courts have defined suggest more than a run-of-the-mill problem like tracking down one's party opponents. Indeed, the Kansas cases suggest good cause

inheres with an error on the part of someone else, or some other factor outside plaintiff's control. But plaintiff asserted no such outside forces here. So it appears that plaintiff doesn't qualify for Kansas's exception to timely service. And federal courts' good cause standard—though not directly applicable to this state law question—bolsters this conclusion, as the court explains below.

## 2.     Federal Case Law on Good Cause

Fed. R. Civ. P. 4(m)[3] defines timely service in federal court. Like Kansas's service provision, it, too employs a good cause exception.[4] *See* Fed. R. Civ. P. 4(m). Our Circuit has explained that courts should read Rule 4(m)'s good cause exception "narrowly to protect only those plaintiffs who have been meticulous in their efforts to comply with the Rule." *Despain v. Salt Lake Area Metro Gang Unit*, 13 F.3d 1436, 1438 (10th Cir. 1994) (citation and internal quotation marks omitted). What's more, this district "routinely finds that a plaintiff's inability to locate a defendant is insufficient to establish good cause under Rule 4(m)." *Joe Hand Promotions, Inc. v. 3rd Generation, Inc.*, No. 22-1069-TC-RES, 2022 WL 3213118, at *2 (D.

---

[3] Rule 4(m) provides that if

> a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

[4]     To be sure, the federal rules also allow a court discretion under Rule 4(m) to extend time to serve even without good cause. *Espinoza v. United States*, 52 F.3d 838, 841 (10th Cir. 1995) ("If the plaintiff fails to show good cause, the district court must still consider whether a permissive extension of time may be warranted."). But even if the court were to grant plaintiff here such a permissive extension, it wouldn't solve his 12(b)(6) commencement problem. It would only solve his 12(b)(5) insufficient or untimely service problem. And the court isn't deciding Dr. Kepka's motion on 12(b)(5) grounds. So, the court needn't engage in a permissive extension analysis. The court thus only consults federal case law as a point of reference for a proper good cause determination.

13

Kan. July 15, 2022) (collecting cases). Plaintiff's sole excuse—inability to locate a defendant—"routinely" has proven "insufficient to establish good cause" in federal court. *Id.* And he hasn't provided any indication that his efforts to serve before the 90 days were "meticulous." *Despain*, 13 F.3d at 1438. In sum, the court recognizes that Kansas law controls the good cause requirement at issue. But it also finds the federal cases instructive. And the specific determination that an inability to locate a defendant is insufficient bolsters the court's conclusion.

And so, the court concludes that plaintiff hasn't established good cause that would allow extension of his time to serve under Kan. Stat. Ann. § 60-203(a). Without an extension, plaintiff's commencement date shifts from the date he filed the case to the date he effected service on Dr. Kepka. And commencement on the date of service means plaintiff's claims are time-barred because the statute of limitations had expired by then. The court thus grants Dr. Kepka's Motion to Dismiss (Doc. 11).

## IV.     Conclusion

The court concludes that Kansas law applies to determine the commencement of this action because it originated in state court. Under Kansas law, the commencement date has shifted from the date of filing to the date of service because plaintiff neither served Dr. Kepka in the requisite 90 days nor qualified for the good cause exception to extend service under Kan. Stat. Ann. § 60-203(a). Given the shifted commencement date, this action is time-barred. And so, the court grants Dr. Kepka's Motion to Dismiss (Doc. 11). The court dismisses plaintiff's claims against Dr. Kepka with prejudice on statute of limitations grounds.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Dennis Kepka, M.D.'s Motion to Dismiss (Doc. 11) is granted. The court directs the Clerk of the Court to terminate Dennis Kepka, M.D. as a defendant in this action.

**IT IS SO ORDERED.**

**Dated this 27th day of August, 2024, at Kansas City, Kansas.**

<u>s/ Daniel D. Crabtree</u>
**Daniel D. Crabtree**
**United States District Judge**
